# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60670-CIV-DIMITROULEAS/ROSENBAUM

FRANK R. ZOKAITES,

     Plaintiff,

vs.

3236 NE 5TH STREET, INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

This matter is before the Court upon Plaintiff's Motion for Attorneys' Fees [D.E. 73] pursuant to an Order of Reference entered by the Honorable William P. Dimitrouleas. [D.E. 74]. The Court has reviewed the Motion, Defendant's Response [D.E. 87], the Reply [D.E. 90], and the Court file, and has heard argument from counsel at a hearing held on this matter.[1]  For the reasons stated below, the Court recommends that Plaintiff's Motion for Attorneys' Fees be granted in part and denied in part.

## I. BACKGROUND

The underlying lawsuit involves claims asserted by Plaintiff against Defendant for breach of contract and specific performance.  Specifically, Plaintiff entered into two purchase agreements (the "Purchase Agreements") in connection with the construction of two condominium units (Unit 5A and 5B) in the Ocean Place at Silver Beach Condominium Project.  Plaintiff asserted that Defendant

---

[1]  The Court has also reviewed each of the parties' supplemental filings provided to the Court after the hearing of this matter.  During the hearing, Defendant sought to file a supplement to address additional fees set forth in Plaintiff's amended fee request.  The Court allowed Defendant to file its supplement and further allowed Plaintiff to respond to the supplement.

failed to complete the units as required by the Purchase Agreements.  Hence, Plaintiff filed the Complaint against Defendant for breach of contract and specific performance. [D.E. 1]. Additionally, Plaintiff filed a Notice of *Lis Pendens* with respect to both of the units at issue. Defendant responded by filing its Answer as well as a Counterclaim against Plaintiff in which it set forth counts for breach of contract and slander of title. [D.E. 5].  Following a bench trial, the Honorable William P. Dimitrouleas issued Findings of Fact and Conclusions of Law [D.E. 61] and entered a Final Judgment in favor of Plaintiff.[2] [D.E. 62].  Subsequently, Plaintiff filed his Motion for Attorneys' Fees, which is now before the Court for consideration.

In Plaintiff's Motion for Attorneys' Fees, Plaintiff seeks for Defendant to reimburse him for $70,530.51 in attorneys' fees that he expended in connection with the litigation of this matter, along with $7,000 for a credit that he claims he was supposed to receive in another state court matter involving the units.  Plaintiff also later filed an Amended Supplemental Affidavit of Attorneys' Fees ("Amendment") [D.E. 98-2] and a Second Supplemental Affidavit of Attorneys' Fees ("Second Amendment") [D.E. 105-2] setting forth additional fees that he claims have been incurred since the filing of the Motion for Attorneys' Fees.  In his Amendment, Plaintiff states that he spent another $9,517.92 for attorney time and seeks reimbursement for those fees.  Further, Plaintiff estimated that an additional $1,500 in attorney time would be spent preparing for and attending the hearing on the Motion for Fees.  In his Second Amendment, however, Plaintiff replaced his estimate of $1,500, and affirmatively stated that he incurred $2,979.34 in additional fees since the filing of the Amendment.

---

[2]      Plaintiff filed a Motion for Partial Reconsideration [D.E. 68] with respect to the Court's denial of Plaintiff's lost profits.  The Court denied the Motion for Reconsideration [D.E. 89] and Plaintiff ultimately appealed that decision. [D.E. 95].  Plaintiff's appeal on the issue of lost profits was dismissed, however, when the Eleventh Circuit recently entered an Order of Dismissal after Plaintiff filed a Notice of Voluntary Dismissal. [D.E. 103].

2

Consequently, the full amount sought by Plaintiff is $90,027.77.

Plaintiff, as the prevailing party in this action, moves for his attorneys' fees pursuant to paragraph 7 of each of the Purchase Agreements.  Defendant does not object that Plaintiff, as a prevailing party, is entitled to a reasonable attorney fee in this action and concedes that the hourly rates charged by Plaintiff's counsel are reasonable.  Defendant, however, does object to certain time entries set forth in the billing records as unreasonable or otherwise non-compensable.  This Order addresses only those entries that Defendant contends are unreasonable or otherwise not compensable.

## *II. ANALYSIS*

### A.  Entitlement to Attorneys' Fees

As noted above, Plaintiff asserted a claim for breach of contract alleging that Defendant breached the Purchase Agreements by failing to construct the condominium units in accordance with the terms of those agreements.  Paragraph 7 of each of the Purchase Agreements provides, "If any litigation or legal action arises out of this Contract, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs."  There is no dispute that Plaintiff prevailed at trial, and, thus, he is entitled to his attorneys' fees.  Defendant concedes this entitlement issue, as it did not oppose an award of fees, but only the amount of the fee to be awarded.  So, the question becomes not whether Plaintiff is entitled to his fees, but rather, what amount is reasonable and should be awarded.

### B.  Calculation of Attorneys' Fees

Having determined that Plaintiff is the prevailing party and is, therefore, entitled to his attorneys' fees, the Court now turns to a calculation of the reasonable attorneys' fee.  This Circuit has adopted the lodestar method to determine a reasonable attorneys' fee.  *Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).  In computing the lodestar, the first step requires the Court to determine the reasonable hourly rate.  A "reasonable hourly rate"

3

has been defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1299). The Court is deemed an expert on the issue of hourly rate and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

Once the hourly rate is set, the Court must determine the reasonable number of hours expended in the litigation. This analysis focuses on the exclusion of hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). The burden of establishing that the time for which compensation is sought was reasonably expended on the litigation falls on the fee applicant. *See ACLU of Georgia*, 168 F.3d at 428. The fee applicant must provide the Court with specific and detailed evidence that will allow the court accurately to determine the amount of fees to be awarded. *Id*. If the party moving for the fees fails to exercise required billing judgment, the Court is obligated to do so by reducing the number of hours and "pruning out those that are excessive, redundant or otherwise unnecessary." *Id*.

### 1.   <u>Reasonable Hourly Rates</u>

In calculating the lodestar, the Court must first determine whether the hourly rates sought are reasonable. *Norman* discusses the evidence needed to satisfy a fee applicant's burden of demonstrating reasonable rates:

> Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. *Blum [v. Stenson]*, 465 U.S. [886] at 896 n. 11, 104 S.Ct. at 1547 n. 11, 79 L.Ed.2d 891. It should also be

> noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. *See Hensley*, 461 U.S. [424] at 439 n. 15, 103 S.Ct. [1933] at 1943 n. 15, 76 L.Ed.2d 40. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

*Norman*, 836 F.2d at 1299. Satisfactory evidence may also include citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases. It should also be noted that, although the Eleventh Circuit set forth the new lodestar approach in *Norman*, it reiterated that at least some of the *Johnson* factors still have some utility in establishing the hourly rate.[3] *Norman*, 836 F.2d at 1299.

Plaintiff retained the firm of Lee & Amtzis, P.I., to bring the claims on his behalf. Attorneys Eric Lee, Stacie Daley, and Gina Greenwald provided representation for the firm. Additionally, Ziva

---

[3] The twelve *Johnson* factors that may be considered when setting a fee include the following:

(1) the time and labor required;
(2) the novelty and difficulty of the issues;
(3) the skill required to perform the legal services properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of professional relationship with the client; and
(12) the awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

Allen performed services as a paralegal. Plaintiff seeks to be awarded a fee at an hourly rate of $295 for Attorney Lee, $255 for Attorney Daley, and $165.75/$185 for Attorney Greenwald.[4] Plaintiff also seeks to be awarded a fee at an hourly rate of $95 for paralegal Ziva Allen. Plaintiff proffers that attorney Lee, an experienced attorney, provided the majority of the representation and that Plaintiff agreed to pay the law firm a fee of $295 per hour for his time.

In support of his Motion, Plaintiff attaches the affidavit of Paul O. Lopez, an AV rated attorney who is also a Certified Civil Circuit Mediator, Qualified Arbitrator, and has served as a Special Master in complex commercial litigation matters. [D.E. 73-4]. Mr. Lopez reviewed the time records submitted by Plaintiff's counsel, examined the file, and discussed the matter with Plaintiff's counsel. After engaging in these activities, Mr. Lopez agreed that the rates charged by the attorneys and paralegal providing services in this case fall within the range of the prevailing market rate in the South Florida legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation. In fact, Mr. Lopez opined that the rates charged were below the prevailing rates of attorneys of similar backgrounds and experience.

As *Norman* makes clear, "The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 433). Based on the Court's own experience and knowledge of prevailing market rates for similar services in the South Florida legal community, as well as on Mr. Lopez's affidavit and a review of the record, the Court finds that the hourly rates sought are reasonable. This finding is appropriate especially considering that Defendant does not oppose an award based upon

---

[4]    Attorney Greenwald's rate increased during the course of the instant lawsuit.

the hourly rates sought.

## 2.      Hours Reasonably Expended

The Court must next determine the reasonableness of the hours expended by Plaintiff's counsel.  A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Id.* at 1301.  Thus, fee applicants are required to use "billing judgment." *Id.*  In ascertaining the number of reasonable hours, a court must deduct "excessive, redundant or otherwise unnecessary hours" from those claimed.  *Id.*

The Court has reviewed the detailed time entries provided by Plaintiff to determine whether the hours expended in this matter were excessive, redundant or otherwise unnecessary in the exercise of billing judgment.  *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988).  The Court has also heard argument of counsel at the hearing held in this matter. The time records submitted reflect that the attorneys representing Plaintiff spent $90,027.77 litigating this matter over a period of nearly 21 months.  Defendant asserts that this amount is unreasonable and attacks certain time entries as excessive, vague, or otherwise non-compensable.

## Attorney Gina Greenwald

As part of his claim for attorneys' fees, Plaintiff seeks $9,355.27 for time billed by Attorney Greenwald.  Defendant objects, stating that certain services performed by and billed by Attorney Greenwald were unnecessary.  Specifically, Defendant objects to $1,292.85 of the total amount billed.  The entries to which Plaintiff objects relate to time spent working on jury instructions and preparing for trial.  Defendant argues that because the matter was tried before the Court, the parties

did not submit jury instructions. And, since the parties attended a bench trial, Defendant asserts that any time spent by Attorney Greenwald drafting jury instructions should not be awarded. Additionally, Defendant contends that time spent by Attorney Greenwald for trial preparation should not be compensated because she did not attend the trial.

Plaintiff responds that the parties originally intended for the trial to be presented to a jury, and it was not until after jury instructions were due that the parties agreed to a bench trial. For this reason, Plaintiff argues that he is entitled to the time spent by Attorney Greenwald preparing jury instructions. Furthermore, at the hearing of this matter, Plaintiff pointed out that Defendant did not make any objection to specific time entries relating to trial preparation by Attorney Greenwald. Defendant's counsel conceded at the hearing that Defendant did not challenge any particular time entries in its Response relating to time spent by Attorney Greenwald preparing for trial. With the parties' concession regarding the billing entries for Attorney Greenwald's trial preparation, Defendant's initial challenge to these entries becomes moot. Thus, I recommend awarding fees for the time spent by Attorney Greenwald for trial preparation.[5]

The Court now turns its attention to the time billed for preparing jury instructions. Although the Court recognizes that the case was ultimately decided following a bench trial, time spent in drafting jury instructions should be compensated. The Court finds that the parties intended for the matter to be tried by jury until just prior to when the trial period began. And, although during the

---

[5]    Notwithstanding Defendant's concession, the Court notes that it was not unreasonable for Attorney Greenwald to bill for trial preparation, and it would not have been unreasonable for her to have attended the trial in this matter. This is especially true where, according to Plaintiff, Defendant was represented at trial by three attorneys. The fact that Plaintiff chose to have one attorney attend the trial shows that Plaintiff's counsel was not merely "churning" the file and also warrants reimbursement for work done by Attorney Greenwald in the office to assist in Attorney Lee's trial appearance.

hearing of this matter, counsel for Defendant stated that the case was never set for a jury trial, the Court finds that certain documents indicate the contrary. More specifically, various e-mails as well as *Defendant's* Motion to Continue Trial, evidence the parties' intention to try the case to a jury.

First, an e-mail dated March 4, 2008, from Plaintiff's counsel to Defendant's counsel attaches draft jury instructions. D.E. 90-2. The e-mail also seeks for Defendant to add its requested sections to the draft jury instructions and make revisions to the draft. *Id.* Additionally, on March 11, 2008, counsel for Defendant forwarded a responsive e-mail stating that Defendant had affirmatively authorized a non-jury trial. D.E. 90-3. Both of these e-mails show that the parties were proceeding, at least up until March 11, 2008, under the presumption that the case would be tried in front of a jury. Finally, the Court finds that Defendant's Unopposed Motion to Continue Trial [D.E. 39] supports a finding that the parties understood that the case would be submitted to a jury. In its Motion, Defendant states that "notwithstanding that the Defendant previously requested a trial by jury in its Answer (DE 5), both parties have now agreed to a bench trial." D.E. 39 at ¶5. The Motion to Continue was filed on March 12, 2008, and the trial was set to begin during the two-week trial period commencing on March 17, 2008.

Because documentation supports Plaintiff's contention that the parties were proceeding under the belief that the case would be tried by jury, at least until just prior to trial, the Court finds that it was reasonable that Attorney Greenwald billed time for preparing jury instructions. Likewise, after reviewing the specific billing entries for such preparation, the Court finds that the time billed by Attorney Greenwald (7.8 hours) was reasonable. Thus, the Court will award all time spent by Attorney Greenwald in this matter, including the $1,292.85 spent drafting jury instructions.

**Attorney Eric Lee**

Next, as part of his initial claim for attorneys' fees, Plaintiff seeks $57,023.50 for time billed by lead counsel Eric Lee.[6]  Defendant objects, asserting that certain time entries billed by Attorney Lee were either excessive, unnecessary, or are not properly documented.  Of the $57,023.50 in billings, Defendant objects to $12,166.90.  These objections fall into two general areas: (1) vague time entries, including, among other challenged entries, excessive client contact, and (2) time spent on ministerial tasks.  The Court will address each one in turn below.

      a.     **Vague Time Entries and Excessive Client Contact**

Defendant objects to Attorney Lee's time entries, arguing that they are vague and that Plaintiff should not be reimbursed for what Defendant deems to be excessive client contact. Defendant argues that many of the time entries are too vague for Defendant or the Court to determine the nature of the services performed and, thus, Plaintiff should not be compensated for those time entries.  In support of his position, Defendant points to various entries that state, "[D]raft correspondence to Zokaites," "[T]elephone conference with Zokaites," and "[S]tudy and review correspondence with Zokaites."  Defendant emphasizes that each of these entries fails to state with specificity the task involved, thus, leaving Defendant and the Court guessing at the service provided. Due to the use of generic terms, Defendant argues that Plaintiff has not provided the Court with enough information to support an award.  In furtherance of its argument that the Court is justified in reducing the number of hours sought if counsel's time records are imprecise, Defendant cites *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1253 (10th Cir. 1998).

---

[6]    The Court acknowledges that Plaintiff seeks additional fees as referenced in his Amendment [98-2] and Second Amendment [105-2] and notes that those fees will be addressed below.

As noted above, the fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. *Norman*, 836 F.2d at 1303; *See also ACLU of Georgia*, 168 F.3d at 428. The fee applicant must provide the Court with specific and detailed evidence that will allow the court accurately to determine the amount of fees to be awarded. *Id.* Counsel is required to maintain records to show the time spent on different claims, and the "general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437 n. 12). However, where the documentation is inadequate, the court is not relieved of its obligation to award a reasonable fee, and may make an award of its own experience. *Id.*

Plaintiff contends that his counsel's time records do not include group billing entries, block entries, or other vague entries that represent a significant amount of time. Plaintiff also states that the Eleventh Circuit has found that even where time entries were severely redacted, where it is impossible to tell what an attorney was doing, or there is little information as to which claim work pertained, compensation may still be appropriate. *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1196 (11th Cir. 2002). In this regard, Plaintiff notes that in *Oxford*, the Court found that it was not an abuse of discretion for the district court to look at surrounding time entries to justify a fee award. *Id.* at 1197. Indeed, the district court in that case concluded that surrounding time entries provided enough detail to assist in determining the substance of other time entries lacking in detail. In finding that there was no abuse of discretion, the Eleventh Circuit noted that the number of entries that failed to contain details was relatively small, and, thus, it was within the district court's discretion to include those hours in the award. *Id.*

Plaintiff argues that reviewing his counsel's time records as a whole provides sufficient

11

information to demonstrate the subject matter of the various telephone conferences, conferences, and correspondence.  Further, Plaintiff emphasizes that Defendant has not presented any evidence to contradict Plaintiff's expert affidavit opining that the services were reasonable and necessary to represent Plaintiff.  Based on the fact that Defendant has failed to rebut Plaintiff's expert witness's affidavit, Plaintiff argues that the Court should reject Defendant's argument that the time entries were not sufficiently detailed.

The Court has reviewed the various time entries carefully and finds that while many of the entries provide sufficient information for the Court to assess the services performed, a significant number do not.  As noted by Defendant, many of the time entries reflect no other information than "draft correspondence to Zokaites," "telephone conference with Zokaites," and "study and review correspondence with Zokaites."  The entries do not provide a general indication of the reason for the task billed[7] thus, in many instances, the Court cannot assess the time claimed for the activity including whether time was spent on excessive client contact.  For this reason, it is difficult for the Court to find that Plaintiff has maintained records that are "set out with sufficient particularity so that the district court can assess the time claimed for each activity."  *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437 n. 12).

Even taking into consideration the surrounding entries, the Court is left with the same conclusion.  The Court is aware and agrees with Plaintiff that the Eleventh Circuit allows the Court to analyze surrounding entries to extrapolate what would otherwise be deemed vague time entries.  Indeed, the district court in *Oxford* did so and concluded that surrounding time entries provided

---

[7]    The Court recognizes that the substance of attorney-client communications is, of course, protected by the attorney-client privilege.  Nevertheless, Plaintiff must provide some general description of the purpose of the work billed to enable the Court to discern the necessity for it.

enough detail to assist in determining the substance of other time entries lacking in detail.  Here, the Court is able to discern the substance of some of the otherwise vague entries such as "draft correspondence to Zokaites" by looking at surrounding entries.  For example, one such time entry entered on May 1, 2007, is preceded by an entry that states "Revision of Complaint."  In this instance, the Court can infer that the correspondence to Zokaites related in some way to the drafting of the Complaint.  However, in many other instances, it is not possible to look to surrounding entries to explain the substance of the services provided.[8]

Additionally, this case is unlike the *Oxford* case where the Eleventh Circuit noted that the number of entries that failed to contain details was relatively small, and, thus, it fell within the district court's discretion to include those hours in the award. *Oxford*, 297 F.3d at 1197.  Instead, there are numerous entries that suffer from the same deficiency.  Plaintiff suggests that the fact that he has already actually paid for the entirety of fees sought from Defendant – including those for communications billed in a vague manner, demonstrates that the fees for the hours in question were reasonably expended.  While in conducting its analysis, the Court certainly takes into consideration Plaintiff's point, the court cannot abdicate its responsibility to conduct an inquiry into the reasonableness of the hours sought to be awarded, simply because the prevailing party was willing to pay his own attorney the fees charged. "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

---

[8]    Indeed from May 18, 2007, through July 17, 2007, nearly two months of billing entries reflect "telephone conference with Zokaites" or similarly vague entries with no surrounding substantive entries.

The Court's review of the numerous vague entries also directly impacts its ability to discern whether Plaintiff's counsel's billing is excessive with respect to client communications. Defendant notes that Plaintiff seeks to recover fees for over 200 client contacts totaling in excess of 36 hours of attorney time. Defendant emphasizes that the attorney time spent communicating with Plaintiff totals $10,587.50, which it contends is "patently excessive." In response, Plaintiff's counsel argues that the case remained pending for approximately 1½ years, which means that he spent only 2 hours per month communicating with his client. Counsel also emphasizes that there were many depositions taken during the pendency of the suit, and it was necessary to gather information from his client for the *lis pendens* hearing that took place.

Although in excess of 36 hours of client contact may, in some circumstances not be deemed to be excessive, because of the lack of detail in the billing entries, it is not possible to make such a finding here. While 36 hours of client contact during an 18-month course of litigation is not *per se* excessive, it could be deemed excessive under certain circumstances. The fundamental problem is that the billing records lack the requisite detail to enable the Court to make a finding that counsel's contact with is client was not excessive. Or, put another way, where the time records lack specificity and are vague, as here, the Court cannot affirmatively determine that the contact was necessary and reasonable. If, perhaps, additional information had been provided further explaining the work performed, the Court could firmly state an opinion as to whether the client contact was excessive. With the current time records, however, the Court cannot find that all time spent conferring with the client was reasonable and necessary to the case.

In the absence of documentation sufficiently adequate to allow the Court to discern the purposes of the specific billings in question, the Court should reduce the award accordingly. *See Hensley*, 461 U.S. at 433. Indeed, where the documentation is inadequate, the court is not relieved

14

of its obligation to award a reasonable fee, but may make an award of its own experience. *Norman*,

836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437 n. 12).  Hence, under the circumstances, the Court

recommends reducing the hourly fees requested by Attorney Lee for services such as "draft

correspondence to...," by twenty-five percent, or $3,112.00, to account for vague time entries for

which the Court cannot adequately assess the services performed.[9]  *See Case*, 157 F.3d at 1253 (the

court is justified in reducing the number of hours sought if counsel's time records are imprecise);

*In re Olson*, 884 F.2d 1415 (D. Col. 1989)(reducing fee request by ten percent where invoices

reflected excessive conferences and conferences that were insufficiently documented).

Consequently, I recommend reducing Attorney Lee's requested fee by $3,112.00 and awarding

Plaintiff $53,911.50 for Attorney Lee's time.

  **b.**  <u>**Time Entries Referencing Unknown Individuals**</u>

   Defendant also asserts that certain time entries reference individuals who supposedly assisted

in the litigation, but are unknown to Defendant.  Specifically, Defendant states that the invoices refer

to "Robinson," "Cohen," "Waas," and "Polk" but fail to identify each of the individuals or to state

how each person assisted in the litigation.  Because the entries are unexplained and vague, Defendant

claims that the attorneys' fees associated with these time entries ($1,239.40) should not be awarded.

   Plaintiff responds that Defendant is aware of the identities of each of the individuals listed

in his billing records.  First, Plaintiff explains that Ms. Cohen is an attorney who represented another

condominium purchaser who also sued Defendant in the original state court suit.  At the time of their

discussions, Ms. Cohen was involved in litigation seeking return of her client's deposits from

---

[9] The Court finds that the total number of hours charged by counsel in vague entries
that are not elucidated by surrounding entries or otherwise explained amount to $12,448.00 in
attorney time.  These entries include client communications and communications to third parties
that are difficult to assess.

Defendant.  Plaintiff claims that discussions with Ms. Cohen assisted him in litigation, particularly since they discussed using her client as a witness in the instant matter.  Next, Plaintiff informs the Court that Mr. Waas and Mr. Polk are attorneys who represented Balistreri Realty in the prior action brought by Plaintiff.  Plaintiff explains that Defendant listed Waas and Polk's client, real estate agent Luc Gauthier, as a witness in this case.  Additionally, Plaintiff claims that settlement issues in the instant case arose involving Balistreri Reality due to the potential real estate commission that would be owed in the event that a sale of the units occurred.  In light of these issues, Plaintiff argues that it was reasonable for his counsel to confer with these individuals.  Finally, Plaintiff contends that Mr. Robinson was identified to Defendant as a potential witness and listed as such in the parties' Joint Pretrial Stipulation.  According to Plaintiff, Defendant was well aware that Robinson was the individual who acted as Plaintiff's representative at the walk-through inspection of the condominium units.  With Robinson's direct involvement in the inspection of the units, Plaintiff claims that the time entries relating to Mr. Robinson are compensable.

During the hearing on this matter, counsel for Defendant ultimately conceded that he was familiar with each of the names previously labeled as "unknown individuals."  More specifically, counsel agreed that Robinson conducted the walk-through of the units for Plaintiff identifying the alleged defects in the units, and that it was reasonable for Plaintiff's counsel to confer with him for that reason.  With respect to Ms. Cohen, Defendant argues that she was not a witness in this case and if Plaintiff's counsel spoke to her to obtain her thoughts on this case, Defendant should not have to pay for those conferences.  Lastly, with respect to Mr. Waas and Mr. Polk, Defendant's counsel stated that he did not see how these individuals could assist with Plaintiff's preparation of this case.

After reviewing the parties' briefs and having had the benefit of Plaintiff's explanation as to why the individuals in question were contacted, the Court finds that the time entries in question

should be allowed.[10]  It was reasonable for counsel to confer with Robinson because he acted as Plaintiff's agent in conducting the walk-through of the units.  Indeed, Robinson was a key witness to the condition of the units, including the alleged defects that comprised Plaintiff's breach of contract claims.  Likewise, it was reasonable for counsel to speak with Attorney Cohen with respect to her client's similar claims against the same defendant.  In this regard, as explained by Plaintiff, counsel's discussions would form the basis of whether he called her client as a witness in this case. Lastly, the Court finds that it was reasonable for counsel to contact Mr. Waas and Mr. Polk in light of the settlement issues that arose in the case.  And, although Defendant claims that he was not aware that Waas and Polk were contacted, that is not the standard for the Court to deny fees.  The Court notes that Plaintiff's expert witness found them to be reasonable and Defendant has not rebutted that opinion.  Moreover, the Court notes that it independently views these hours as reasonably expended.

Finally, in response to Defendant's additional concern that certain billing entries relate to the state court case between the parties, the Court notes that during the hearing, Plaintiff's counsel verified that he kept separate time records for the state court case under a different case number.  In this regard, counsel swore, as an officer of the court, that the time reflected on the invoices for this matter consist only of the actual attorney time spent in this case nor did Defendant present any evidence suggesting the contrary.  Under these circumstances, I recommend granting Plaintiff's fees for time expended in connection with what Defendant deems to be "unknown parties."   These contacts were not excessive, and each contact appears to have been reasonably conducted.

---

[10]    Although the billing records referencing these individuals sometimes suffer from the same lack of detail discussed above, the Court declines to reduce the award because counsel explained in sufficient detail during the hearing the substance of the contacts at issue.  Based on counsel's explanation of the time spent, the Court finds that the time sought is reasonable.

### c. __Time Spent on Ministerial Matters__

Finally, Defendant contends that any time spent by Attorney Lee on ministerial matters should not be compensated. According to Defendant, items such as drafting notices of unavailability or notices of deposition should be performed by a paralegal at a rate much lower than the $295 hourly rate charged by Attorney Lee. Defendant asserts that Plaintiff should be compensated for these time entries at the rate of $95 per hour (the rate charged by their paralegal). Plaintiff responds that whether a paralegal can prepare the notices is irrelevant. Instead, Plaintiff emphasizes that the nine time entries extracted by Defendant occurred over a fifteen-month period. Additionally, Plaintiff asserts that preparing such notices is not ministerial and, instead, things such as making copies, typing documents, and mailing documents are examples of ministerial duties.

During the hearing, the parties presented their arguments. The Court agreed that it was not necessarily unreasonable for Plaintiff's counsel to bill at least some time with respect to the notices. Indeed, both parties agreed that had a paralegal drafted the notices, Attorney Lee should have reviewed them before signing them, anyway. Upon further consideration, counsel for Plaintiff agreed that the items challenged by Defendant as "ministerial" could have been completed in .1 hours instead of the .2 hours actually billed. Ultimately, counsel stated that he would consent to a reduction in these items to reflect .1 hours of attorney time. Based upon Plaintiff's counsel's concession and the Court's independent opinion that .1 hours is appropriate for Attorney Lee to bill for drafting these notices, I recommend reducing the fee award by .9 hours ($265.00).

### __State Court Attorneys' Fees__

Plaintiff also argues that he is entitled to fees that he incurred in the state court case between the same parties. According to Plaintiff, after suing Defendant in state court, the action was resolved by way of a settlement agreement. Plaintiff alleges that pursuant to the settlement agreement,

Defendant agreed to proceed with construction of the units and also agreed to reimburse Plaintiff for attorneys' fees and costs incurred in the state court proceeding by providing a $3,500 closing credit for each of the units purchased by Plaintiff. Because Defendant subsequently breached the Purchase Agreements, causing no closing, Plaintiff contends that he is entitled to the $7,000 agreed to in the state court action.

Defendant disagrees and argues that this Court does not have jurisdiction over the state court settlement agreement and, therefore, may not award the fees provided for therein. Defendant further emphasizes that because the parties never closed on the units, no payment is warranted. Finally, Defendant points to the language of paragraph 3 of the settlement agreement, upon which Plaintiff relies, and notes that it does not state that Defendant shall pay any attorney fee to Plaintiff. Instead, Defendant cites to paragraph 6 which states that "[e]ach party shall bear their own attorney's fees and costs in connection with the Action and in preparing and executing the within Settlement Agreement."

During the hearing, the Court reviewed the provisions of the state court settlement and explained to Plaintiff's counsel that unless there was a specific contractual provision that he could point to which justified an award of fees, the Court could not award the $7,000 sought. Counsel candidly agreed that there was no provision in the state court settlement agreement providing that the $7,000 credit would be included in any subsequent case. Counsel also conceded that the $7,000 sought did not stem from attorneys' fees incurred in the instant case.

The Court finds that the $7,000 sought for state court fees must be denied. First, it is questionable at best whether this Court even has jurisdiction to enforce the provisions of the state court settlement agreement. Notwithstanding this potential jurisdictional problem, the Court finds that the terms of the settlement agreement do not warrant an award of fees. Absent contractual

language providing for attorneys' fees, this Court cannot make such an award. *See Aleyska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975). Furthermore, the $7,000 sought is more appropriately deemed a closing credit rather than attorneys' fees and, because the closing never occurred, Plaintiff may not recover this amount.

## SUPPLEMENTAL FEES

The Court now turns its attention to the additional fees sought as set forth in Plaintiff's Amended Supplemental Affidavit of Attorneys' Fees [D.E. 98-2] and Second Supplemental Affidavit of Attorneys' Fees [D.E. 105-2]. As noted above, in his Amendment, Plaintiff states that he spent $9,517.92 in attorney time since he first filed his Motion for Fees, and, accordingly, he seeks reimbursement for those fees. Further, Plaintiff estimated that an additional $1,500 in attorney time would be spent preparing and attending the hearing on the Motion for Fees. However, in his Second Amendment, Plaintiff replaced his estimate of $1,500, and, instead, stated that Plaintiff incurred $2,979.34 in additional fees since the filing of the Amendment. Consequently, besides the $77,530.51 sought in the initial fee application, Plaintiff seeks another $12,497.26 for attorney time expended after the original Motion for Attorneys' Fees was filed.

Defendant objects to only a portion of the fees sought in Plaintiff's Amendment. Specifically, Defendant objects to time entries that it argues relate to the state court action, attorney time spent on executing the judgment, and attorney time expended on Plaintiff's Motion for Reconsideration and the subsequent appeal.

### a.    Entries Relating to the State Court Action

In response to Defendant's concern that certain billing entries relate to the state court case between the parties, the Court again notes that during the hearing, Plaintiff's counsel verified that he kept separate time records for the state court case under a different case number. In this regard,

20

counsel swore as an officer of the court that the time reflected on the invoices for this matter was the actual attorney time spent in this case. Additionally, Defendant has not refuted Plaintiff's expert witness affidavit deeming the time entries to be reasonable and necessary to the case. Nor has, Defendant has not provided any other evidence to suggest that the attorney time reflected in these time entries was not related to this matter. Under these circumstances, I recommend granting Plaintiff's fees for time expended on the time entries that Defendant argues were related to the state court action.

       **b.**    **Execution on the Judgment**

During the hearing on this matter, counsel for Defendant also argued that Plaintiff is not entitled to fees for attorney time spent executing on the judgment. More specifically, Defendant contends that the contract clause providing for attorneys' fees does not provide for costs associated with collection of or execution on the judgment. Plaintiff disagrees and argues that he is entitled to these fees. After the hearing, both parties filed supplemental case law in support of their respective positions.

The Court has had the opportunity to review the contract provision as well as the relevant case law and recommends that the Court award the fees sought by Plaintiff in relation to attorney time spent on execution of the judgment. First, the Court turns to the contract clause permitting attorneys' fees. As noted above, it contains general language that provides, "[I]f any litigation or legal action arises out of this Contract, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs." D.E. 73-2 at p. 4. This language is broad enough to encompass fees for execution on the judgment. The provision specifically uses the term *any* litigation or legal action, and, hence, the Court believes that it is fair to construe attorneys' fees expended in executing on a judgment within the provision. *See e.g., Federal Auto Insurance, Inc. v. Business Acquisitions*

21

*Brokerage, Inc.*, 839 So.2d 767 (4ᵗʰ DCA 2003).[11]

Even if the contractual language were not so construed, Plaintiff points to Florida Statute §

57.115(1) as a basis for the fees sought. That statute provides as follows:

> The court may award against a judgment debtor reasonable costs and
> attorney's fees incurred thereafter by a judgment creditor in
> connection with execution on a judgment.

Fla. Stat. § 57.115(1). It is undisputed that the parties, in executing the contracts, agreed that the

laws of the State of Florida would govern.[12]  *See* D.E. 73-2 at p.5. Accordingly, the Court finds that

pursuant to Florida law, Plaintiff is entitled to recover the fees incurred as a result of executing on

the judgment. Thus, I recommend that no reduction be made with respect to the fees sought in the

Amendment that relate to collection efforts or attorney time spent executing on the judgment.[13]

### c.    Motion for Reconsideration and Appeal

Finally, Defendant objects to Plaintiff's recovery of fees for time spent on Plaintiff's Motion

for Reconsideration and the resulting appeal. As noted above, Plaintiff filed a Motion for

---

[11]     The case cited by Defendant in its supplement, *Bittner v. Geier*, 513 So.2d 717 (3ʳᵈ
DCA 1987) does not stand for the proposition that fees may never be awarded for efforts made in
collecting on a judgment. Instead, the court in that case struck a provision entered by the trial
court retaining jurisdiction to award attorneys' fees and costs incurred in collecting the judgment.
*Id.* In a footnote, the court explained that the provision of the agreement at issue did not provide
for an award of fees incurred in collecting on judgments.  *Id.*

[12]     Notwithstanding the parties' agreement, the Eleventh Circuit has announced that in
diversity cases such as this one, attorneys' fees are determined by state law and are substantive
for diversity purposes. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11ᵗʰ Cir. 2001); *Prime Insurance
Syndicate, Inc. v. Soil Tech Distributors, Inc.*, 270 Fed. Appx. 962 (11ᵗʰ Cir. 2008).

[13]     Again, although the Amendment contains billing entries that could otherwise be
construed as vague, the surrounding entries, along with the fact that the Court is aware that these
invoices deal with a limited subject matter (*i.e.*, execution of the judgment, the Motion for
Reconsideration, and appeal), provide the Court with enough information to determine context of
the attorney time. With these facts in mind, the Court finds that time to be reasonable.

Reconsideration addressing the Court's denial of Plaintiff's lost profits. Because the Court ultimately denied the Motion, Defendant contends that fees should not be awarded for billing entries relating to the motion. Additionally, Defendant argues that any fees associated with the appeal of the Motion for Reconsideration to the Eleventh Circuit should similarly be denied. Plaintiff disagrees, urging that he is entitled to the attorneys' fees even though he did not prevail on the issue of lost profits. In so arguing, Plaintiff emphasizes that the damages issue was not a separate claim on which he did not prevail. And, because Plaintiff was the prevailing party on his breach-of-contract claim and in defending against Defendant's counterclaims, he contends that he is entitled to his attorneys' fees incurred in the entire action.

Having considered the arguments of the parties and the relevant case law, the Court finds that Plaintiff is entitled to recover the fees incurred relating to time spent on the Motion for Reconsideration at the District Court level. The Court acknowledges the case law cited by Defendant in support of the proposition that attorneys' fees should not be awarded for claims on which the moving party was unsuccessful. *See Baratta v. Valley Oak Homeowners' Association at the Vineyards, Inc.*, 928 So.2d 495, 499 (2nd DCA 2006); *Lusega v. Albrecht & Albrecht, Inc.*, 2008 WL 779332 at * 5 (N.D. Ga. March 24, 2008) (finding that an apportionment of fees is permissible where the prevailing party prevails on one claim, but not on another). Those cases, however, do not support a reduced fee award in this instance. Indeed, the distinguishing factor here is that Plaintiff's argument that he was entitled to lost profits was not a separate claim, but instead, a theory of damages under a claim on which he indisputably prevailed. In *Lusega*, the Court apportioned the fees award because it found one of plaintiff's *claims* (retaliation) to be frivolous, but the other (race discrimination) not to be frivolous. *Id.* The court cited Eleventh Circuit precedent holding that attorneys' fees can be awarded to a defendant for a frivolous claim when it is joined with an

23

unsuccessful claim that is not frivolous.  *Id,.* (citing *Quintana v. Jenne*, 414 F.3d 1306, 1311-1312 (11th Cir. 2005)).

This is not a case where Plaintiff prevailed on one claim and failed on another.  Instead, Plaintiff prevailed on his breach-of-contract claim and on Defendant's counterclaims, but was denied his lost profits as damages.  In this instance, there is no dispute that Plaintiff is the prevailing party in the case.  Indeed, the situation now before the Court is more akin to that in *Airflo A/C & Heating, Inc. v. Pagan*, 929 So.2d 739 (2nd DCA 2006), a case cited by Plaintiff where the court found the plaintiff to be the prevailing party and, thus, awarded it all of its fees, even though plaintiff failed to prove its damages.  In *Airflo*, because the plaintiff prevailed on its *claim* for injunctive relief, the Court found the plaintiff to be the prevailing party and, consequently, entitled to fees.  Similarly, here, Plaintiff prevailed on his claims.  He is therefore entitled to all of his fees, despite being denied his lost profits.

Where a party has been deemed to be the prevailing party in a case, it is not the Court's function to parse through each motion or other filing made during the course of litigation to determine a "prevailing party" with respect to each particular motion.  Indeed, this type of *post hoc* piecemeal analysis is not appropriate, nor is it judicially efficient.  Instead, the Court determines that Plaintiff is the prevailing party on particular claims and finds that he is entitled to reasonable fees on the claims on which he prevailed, which, in this particular instance, is the entire case.  And, although the Court can understand Defendant's position with respect to the Motion for Reconsideration, Defendant has not suggested that the motion was frivolous, unnecessary, filed for an improper purpose, or filed merely to generate attorneys' fees.  Nor has he argued that the hours expended on that motion were unreasonable.  Under these circumstances, the Court finds that Plaintiff is entitled to the fees related to the Motion for Reconsideration.

On the other hand, the Court agrees that any attorney time expended on Plaintiff's *appeal* of the Court's denial of the Motion for Reconsideration is not compensable. In failing to address this issue in his supplemental filing, it appears that Plaintiff concedes this point. As noted by Defendant, entitlement to appellate attorneys' fees is determined at the appellate court level. And, more significantly, Plaintiff's appeal on the issue of lost profits was recently dismissed by the Eleventh Circuit after Plaintiff filed a Notice of Voluntary Dismissal. [D.E. 103]. Hence, I recommend that the Court decline to award fees for time spent in connection with the appeal.[14]   Accordingly, Plaintiff's fee award should be reduced by $570.28.

In sum, I recommend deducting $10,947.28 from the $90,027.77 claimed. The Court should award Plaintiff attorneys' fees totaling $79,080.49. This award is reasonable, considering Plaintiff's counsels' experience and the amount of work required to litigate this matter.

### III.   CONCLUSION

For the foregoing reasons, and based upon a thorough review of Plaintiff's Motion for Attorneys' Fees [D.E. 73], the attached exhibits setting forth all of the time entries claimed, Defendant's Response, Plaintiff's Reply, the supplemental filings, and the Court file, I hereby **RECOMMEND** that

1.     Plaintiff's Motion for Attorneys' Fees [D.E. 73], be **GRANTED IN PART** and **DENIED IN PART**.

2.     Plaintiff should be awarded attorneys fees in the amount of $79,080.49 as set forth herein.

---

[14]     The Court also notes that a few time entries surrounding time billed relating to the appeal are vague. Because the Court cannot discern the nature of the time spent, it will assume that these entries relate to the appeal, and, therefore, the entries will be deducted from the overall award.

3.     The parties shall have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 13th day of January, 2009.

ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:    Honorable William P. Dimitrouleas
       counsel of record

26